NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 14a0843n.06

Case Nos. 13-3855/3857

**FILED**

**NOV 1 2 2014**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**DEBORAH S. HUNT, Clerk**

| | | |
|---|---|---|
| MARK LANGFORD, | ) | |
| | ) | |
| Petitioner-Appellee/Cross-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| WARDEN, ROSS CORRECTIONAL | ) | OHIO |
| INSTITUTION, | ) | |
| | ) | OPINION |
| Respondent-Appellant/ | ) | |
| Cross-Appellee. | ) | |

BEFORE: BOGGS and DONALD, Circuit Judges; HOOD, District Judge.[*]

**BERNICE BOUIE DONALD, Circuit Judge.** Petitioner Mark Langford, an Ohio state prisoner, filed a writ of habeas corpus pursuant to 28 U.S.C. § 2254, claiming several grounds for relief from his state trial court conviction for murder. The district court granted and denied the petition in part, and both sides appealed. For the reasons that follow, we **AFFIRM** the district court in all respects.

## I. BACKGROUND

In 1995, Mark Langford and Marlon Jones were members of rival gangs. *State v. Langford*, No. 9AP-1140, 2010 WL 3042185, at *6 (Ohio Ct. App. Aug. 5, 2010). In the course

---

[*]The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

of this rivalry, Langford was beaten up. *Id.* In retaliation, on July 18, 1995, Langford, and possibly his friends, shot at the individuals whom they believed had attacked Langford. *Id.* at *1, *6. Jones died in the gunfire. *Id.* at *1, *6. On August 4, 1995, the State of Ohio indicted Langford for Jones' murder. *Id.* at *1. At trial, witness Nichole Smith did not honor her subpoena and appear to testify. *Id.* Subsequently, on November 24, 1995, the state dismissed the indictment, and the court ordered an entry of *nolle prosequi.*

In 2005 two federal prisoners, Jason Arnold and Isaac Jackson, informed law enforcement that they heard Langford, while he was incarcerated, confess to involvement in Jones' murder. *Langford,* 2010 WL 3042185, at *5, *7. In about February 2006, law enforcement reopened the case as a result of this information. *Id.* at *2. Law enforcement located Nichole Smith in 2006, and they also interviewed the two prisoners claiming to have information about Langford. *Id.* On October 24, 2008, an Ohio grand jury again indicted Langford on two counts relating to Jones' death: aggravated murder, in violation of Ohio Rev. Code Ann. § 2903.01, and murder, in violation of § 2903.02. *Id.* Each count included what Ohio law calls a "specification," charging that Langford possessed a firearm during the offense. The firearm specification exposed Langford to a mandatory minimum sentence under § 2929.14(B)(1)(a).

Langford moved the state trial court to dismiss the indictment on the ground that the pre-indictment delay violated his state and federal due process rights and his right to present a defense. *Langford,* 2010 WL 3042185, at *2. Langford argued that several key witnesses – including Paul Michael Ross ("Big Mike") Don Gentry (also known as "Big Mike"), and Deshaun Williams – were now deceased. *Id.* at *2-3. Additionally, at an evidentiary hearing, a detective testified that law enforcement had destroyed two pieces of forensic evidence: the bullet

2

that killed Jones and a cartridge box containing Langford's fingerprint. *Id.* at *2. On June 18, 2009, the trial judge, in open court, denied Langford's motion to dismiss because Langford did not demonstrate that that pre-indictment delay caused him actual prejudice. *Id.* at *3.

On October 19, 2009, the case proceeded to trial. The State of Ohio presented two theories at trial. The first was that Langford was the actual shooter, and therefore a principal offender in the homicide. The second theory was that Langford was an accomplice. Nichole Smith testified that in 1995, she would spend time with "Detroit boys." She further testified that in July 1995 the "Detroit boys" and the "F and L group" (named for Fairwood and Livingston Roads), of which Jones was a part, had a feud over "territorial drugs." She testified that the "F and L boys" "beat [up Langford] pretty bad." Smith testified that on the night of July 18, 1995, she was "hanging out in the alleys," and Langford told her that it was "time to get [the F and L boys]." Smith also testified that Langford and his confederates had three weapons (two handguns and one rifle), but that Langford did not have the rifle. Smith walked with the Detroit boys in the direction of the F and L group, and she witnessed the Detroit boys with the rifle shoot at the F and L group. Smith testified that she also witnessed Langford shooting at the F and L group. The two federal prisoners, Jason Arnold and Isaac Jackson, also testified that Langford confessed to his involvement in Jones' death.

On October 26, 2009 the court charged the jury. On Count One, the court instructed the jury that in order to convict Langford of aggravated murder, it needed to find that Langford "purposely and with prior calculation and design caused the death of Marlon Jones," and it provided a definition of "purposely." *See* Ohio Rev. Code Ann. § 2901.22 ("A person acts purposely when it is his specific intention to cause a certain result . . . ."). The jury was also instructed on the elements of murder, as charged in both Count One (as a lesser included offense)

and Count Two, and was told that the word "purposely" used in the definition of that crime had the same meaning as the court previously explained. Specifically, the jury instructions stated that murder required finding that Langford "purposely caused the death of another." Finally, the court instructed the jury that Langford could be "convicted as a principal offender or as a complicitor or an aider and abetter to any or all counts and specifications in the indictment." The instructions stated:

> Before you can find the defendant guilty of a crime as a complicitor or aider and abettor, you must find beyond a reasonable doubt that . . . the defendant aided or abetted another in purposely committing the offenses . . . . The defendant cannot be found guilty of complicity unless the offense was actually committed, but he may be found guilty of complicity in an attempt to comit [sic] the offense. . . . An aider or abettor is one who aids, assists, supports, encourages, cooperates with, advises, or incites another to comit [sic] a crime, and participates in the commission of the offense by some act, word, or gesture.

On October 27, 2009, the jury returned its verdict. On Count One, the jury acquitted Langford of aggravated murder and the firearm specification but convicted him of the lesser included offense of murder. On Count Two, the jury convicted Langford of murder but acquitted him of the firearm specification. The court sentenced Langford, on Count Two only, to fifteen years to life imprisonment.

On appeal to the Ohio Court of Appeals, Langford raised five assignments of errors, only one of which was sustained. *See Langford*, 2010 WL 3042185, at \*1. The Ohio Supreme Court did not accept Langford's appeal. *See State v. Langford*, 939 N.E.2d 1266 (Ohio 2011) (table). The Ohio Court of Appeals denied Langford's application for reopening, and the Ohio Supreme Court again did not accept Langford's appeal for review. *State v. Langford*, 947 N.E.2d 684 (Ohio 2011) (table).

Langford petitioned in federal district court for a writ of habeas corpus, seeking relief on several grounds: (1) the pre-indictment delay violated his rights to due process and a fair trial; (2) the trial judge failed to instruct the jury on the mens rea for complicity; and (3) his appellate counsel was ineffective for failing to raise several issues to the state court of appeals. A magistrate judge recommended that the district court grant relief on the second claim and deny relief on the others. *See Langford v. Warden, Ross Corr. Inst.*, No. 2:12-CV-0096, 2013 WL 459196 (S.D. Ohio Feb. 7, 2013). The district court conditionally granted Langford relief on the jury instruction issue and dismissed Langford's other claims. *See Langford v. Warden, Ross Corr. Inst.*, No. 2:12-CV-96, 2013 WL 3223379 (S.D. Ohio June 25, 2013).

Respondent Warden appeals the district court's decision granting Langford a conditional writ of habeas corpus on the jury instruction claim. Langford appeals the district court's dismissal of his pre-indictment delay claim and his ineffective assistance of counsel claim.

## II. STANDARD OF REVIEW

We review the district court's legal conclusions regarding Langford's habeas petition de novo. *Davis v. Lafler*, 658 F.3d 525, 530 (6th Cir. 2011) (en banc). A federal court may not grant a petition for a writ of habeas corpus for "any claim that was adjudicated on the merits in State court proceedings," unless the state proceedings:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The "unreasonable application" clause authorizes federal courts to grant the writ when a "state-court decision unreasonably applies the law of [the Supreme Court] to the

facts of a prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 409 (2000). The state-court

application of federal law must be "objectively unreasonable." *Id.*

## III. ANALYSIS

### A. Jury Instruction

#### 1.

"The Constitution gives a criminal defendant the right to have a jury determine, beyond a

reasonable doubt, his guilt of every element of the crime with which he is charged." *United*

*States v. Gaudin*, 515 U.S. 506, 522-23 (1995). Under Ohio law, a defendant can be convicted

under a theory of accomplice liability if he "act[s] with the kind of culpability required for the

commission of an offense." Ohio Rev. Code Ann. § 2923.03(A). A person guilty of complicity

"shall be prosecuted and punished as if he were a principal offender." *Id.* § 2923.03(F). "[T]o

support a conviction for complicity . . . the evidence must show . . . that the defendant shared the

criminal intent of the principal." *State v. Johnson*, 754 N.E.2d 796, 801 (Ohio 2001). Langford

argues that the trial court's failure to so instruct violates Supreme Court law.

Here, the trial court instructed the jury that it could convict Langford as an accomplice if

it found that he "aided or abetted another in purposely committing the offenses." The trial court

did not instruct the jury that complicity required that Langford act with the culpability required

for murder, i.e., purposely. The Ohio Court of Appeals noted that the trial court *did* instruct the

jury on the meaning of "purposely." The court reasoned:

> The jury, by its verdict, found that Langford had a specific intention to cause the
> death of Marlon Jones, either by his own intention or by the transpired intent of
> the shooter who was actually using the Ruger .357. The jury could not have been
> misled by the charge given, nor could it have found Langford guilty based upon
> an error in the jury charge.

*Langford,* 2010 WL 3042185, at *5. The court did not elaborate. It did not explain how the jury "by its verdict" determined that Langford had the specific intention to murder Jones. The jury's verdict form simply stated that the jury "f[ou]nd the defendant guilty of the lesser included offense of murder" and "guilty as to count two of the indictment for murder." The verdict form did not address mens rea or indicate anything the jury may have concluded about Langford's mens rea.

Although the state court's reasoning for rejecting Langford's jury instruction claim is terse, our concern is with the state court's *decision* — not the adequacy, or even logic, of its reasoning. Indeed, we accord the same deference to a state court's adjudication of a claim on the merits regardless of whether it provides any reasoning at all. *Harrington v. Richter,* 131 S. Ct. 770, 784 (2011). "[D]etermining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* AEDPA "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Id.* at 785. Our review, then, is of the Ohio Court of Appeals' decision that the failure to instruct on mens rea did not violate Langford's jury trial right.

"The pivotal question is whether the state court's application of [Supreme Court law] was unreasonable." *Id.* "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Id.* at 786 (internal quotation omitted). "[W]e may grant the writ based on errors in state jury instructions only in extraordinary cases." *Daniels v. Lafler,* 501 F.3d 735, 741 (6th Cir. 2007) (citing *Lewis v. Jeffers,* 497 U.S. 764, 780 (1990)). As previously noted, the prosecution must prove, beyond a reasonable doubt, every element of the crime charged. *Gaudin,*

515 U.S. at 522–23; *see also In re Winship*, 397 U.S. 358, 364 (1970) ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."); *Sandstrom v. Montana*, 442 U.S. 510 (1979) (finding that deficient jury instruction violated the defendant's constitutional rights by not requiring that the state prove every element of the criminal offense beyond a reasonable doubt). Here, however, the trial court did not instruct the jury that conviction as an accomplice, under Ohio law, requires that the defendant have the same intent as the principal. As the magistrate judge correctly reasoned, this violated Supreme Court law. *See Langford*, 2013 WL 459196, at *13. Accordingly, the state court's contrary conclusion was necessarily an unreasonable application of Supreme Court law.

2.

Respondent does not dispute that the trial court failed to instruct on the mens rea of complicity, but instead presents a variety of arguments suggesting, essentially, that any error was harmless. Respondent first argues that the jury instructions, in their entirety, sufficiently instructed the jury on the mens rea element. This appears to be the theory that the Ohio Court of Appeals relied on as well: that the instructions as a whole were not ambiguous. *See Langford*, 2010 WL 3042185, at *5. We find, however, that there was nothing in the jury instructions to convey the principle that an accomplice need act with the same mens rea as the principal offender in order to be found guilty as a complicitor. Beginning with Count One, the twenty-four page jury instructions first addressed the elements of aggravated murder, the firearm specification, and the doctrine of transferred intent. The trial court then turned to the lesser included offenses of murder and involuntary manslaughter. The instruction on the lesser included offense of murder states: "Before you can find the defendant guilty, you must find that

the State has proved beyond a reasonable doubt that the defendant . . . purposely caused the death of another."

Beginning on the fourteenth page, the jury instructions then address Count Two. The instructions again state: "Before you find the defendant guilty of Murder, you must find that the State has proved beyond a reasonable doubt that . . . the defendant purposely caused the death of Marlon Jones." Seven additional paragraphs discuss the firearm specification and the lesser included offense of involuntary manslaughter.

Then, the instructions address complicity: "The defendant may be convicted as a principal offender or as a complicitor or an aider and abettor to any or all counts and specifications of the indictment." The instructions continue: "Before you can find the defendant guilty of a crime as a complicitor or aider and abettor, you must find beyond a reasonable doubt that . . . the defendant aided or abetted another in purposely committing the offenses . . . ." Additionally, the instructions informed the jury: "An indictment charging a defendant as a principal offender also charges the defendant with aiding and abetting that crime."

We agree with the magistrate judge: the state court decision is an unreasonable application of Supreme Court law, even when viewing the jury instructions in their entirety, given the instructions' failure to include any language informing the jury about the required mens rea of complicity. *See Langford*, 2013 WL 459196, at *13. Although the instructions did not directly state that complicity is a strict-liability crime, they also did not affirmatively state the correct mens rea. Rather, the instructions omitted mention of the mens rea for complicity altogether.

As indicated, the trial court instructed the jury that conviction under a theory of accomplice liability required the jury to find that Langford "aided or abetted another in purposely

committing the offenses." We decline to adopt the proposition that the word "purposely" in this clause was sufficient. In order to instruct the jury correctly, and comply with Ohio's model jury instruction, the adverb "purposely" must have modified the verb phrase "aided and abetted." In the instruction *actually* given, the adverb "purposely" instead modifies the verb "committing." This is not, as the dissent argues, a minor or insignificant "misplacement of a word." "Purposely," as instructed, modifies a completely different verb, and in doing so leaves open the question as to the manner in which Langford must have "aided and abetted another." When properly placed, "purposely aiding and abetting another" in committing murder accurately conveys that, in order to be convicted as a complicitor, Langford must have had the specific intent to aid and abet the murder of Jones. When improperly placed, the jury is erroneously informed that in order to convict Langford as a complicitor, Langford must have aided or abetted another, and it is sufficient that the *other* "purposefully committ[ed]" murder. These two scenarios are not functional equivalents. Thus, it is insufficient to say that the instruction is correct, or that its error is harmless—as discussed more fully below—simply because the word "purposely" appears somewhere in the sentence. Accordingly, the word "purposely" in the complicity instruction cannot reasonably be read to accurately convey that Langford must act with the kind of complicity required for the underlying offense.

In addition, the Respondent's reliance on *Henderson v. Kibbe*, 431 U.S. 145 (1977) is misplaced as applied to the facts of this case. In *Henderson*, the defendant robbed an intoxicated man and abandoned him on an unlighted road at night in near zero-degree weather. Shortly thereafter, the man was hit by a truck and died. *Id.* at 147. The state charged the defendant with murder under a statute that provided for guilt when "under circumstances evincing a depraved indifference to human life, [one] recklessly engages in conduct which creates a grave risk of

10

death to another person, and thereby causes the death of another person." *Id.* at 148 (alteration marks omitted). The defendant sought habeas relief, arguing that the trial court should have instructed the jury on the meaning of "thereby causes the death of another person." *Id.* The Supreme Court held the trial court's failure to elaborate on causation was not error where "the trial judge read to the jury" the exact statutory language. *Id.* at 153. There, the defendant's "claim of prejudice [was] based on the failure to give any explanation *beyond the reading of the statutory language itself of the causation element.*" *Id.* at 155 (emphasis added). There is no requirement that a trial court do *more* than instruct on the elements of an offense. Here, however, the trial court did not even read the language of § 2923.03, Ohio's complicity statute.[1]

Further, even reviewing the "totality of the circumstances" at trial, we are not persuaded that the jury was sufficiently aware of the mens rea needed for complicity. Citing *Middleton v. McNeil*, 541 U.S. 433 (2004), Respondent asks us to consider the jury instructions in light of the prosecutor's closing argument at trial. In *Middleton*, the Court found that federal law does not prohibit a state appellate court from assuming that a prosecutor's argument clarifies an ambiguous jury charge. *Middleton*, 541 U.S. at 438. Here, Respondent reproduces in his brief eight pages of the prosecutor's closing argument, but provides almost no accompanying legal argument. Having reviewed the prosecutor's argument, we do not find that it alters the analysis. Respondent suggests that the prosecutor's use of words like "intend," "intentions," "wanted," and "help them," over eight pages of closing argument, somehow shows that the prosecutor cured any defect in the jury instructions. Respondent's argument is not persuasive. It hardly needs stating that the use of words like "intend" and "wanted" in the course of discussing the

---

[1]Also relevant for the Court in *Henderson* was that the defendant did not initially challenge the sufficiency of the jury instructions on direct appeal. *See Henderson*, 431 U.S. at 150. A judge of New York's intermediate court of appeals first raised the issue in his dissent from the court's affirmance of the defendant's conviction. *See id.*

narrative of the crime do not inform a jury that an accomplice must share the mens rea of the principal. The prosecutor's closing argument, if anything, rendered the applicable law more opaque. For instance, Respondent highlights the following statement made by the prosecutor at one point in closing argument: "It doesn't matter who actually fired the bullet that killed Marlon Jones. Everybody helped. Anybody who helped in any way is equally guilty, equally guilty of complicity." This statement, if anything, compounded the error in the jury instructions.

We also reject Langford's characterization of the record. Langford argues that the jury's acquittal on the firearm specifications under Counts One and Two demonstrate that the jury concluded that Langford did not possess a gun and was not the principal offender. Therefore, he argues, the jury must have found him guilty of murder only under the accomplice-liability theory. We decline to draw that inference. As the magistrate judge cogently explained, "[a] jury need not act either rationally or consistently when it returns a verdict in a criminal case." *Langford*, 2013 WL 459196, at *14. We cannot question even inconsistent verdicts. *United States v. Powell*, 469 U.S. 57, 68 (1984). An inconsistent verdict may result because "the jury, convinced of guilt, properly reached its conclusion on the compound offense, and then through mistake, compromise, or lenity, arrived at an inconsistent conclusion on the lesser offense." *Id.* at 65. The magistrate judge correctly reasoned that we may not assume the theory on which the jury convicted Langford — as an accomplice or as a principal. *See Langford*, 2013 WL 459196, at *15.

3.

Finally, Respondent argues that any failure to instruct on an element of the offense was harmless error. A trial court's failure to charge an element of an offense is subject to harmless error analysis. *See Neder v. United States*, 527 U.S. 1, 12 (1999). The Supreme Court has

12

further recognized that a trial court's failure to instruct fully and accurately about the necessary

mens rea for accomplice liability is reviewed for harmless error. *See California v. Roy*, 519 U.S.

2, 3–4 (1996). On federal habeas review, the omission of an element is not harmless error if

there is "grave doubt about whether a trial error of federal law had 'substantial and injurious

effect or influence in determining the jury's verdict.'" *O'Neal v. McAninch*, 513 U.S. 432, 436

(1995) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993)).

Two cases illustrate how the harmless error doctrine operates in the context of faulty-

jury-instruction claims. In *Neder*, the jury convicted the defendant of multiple counts of mail

fraud, wire fraud, and filing false income-tax returns. 527 U.S. at 6. The Court ruled that the

materiality of a defendant's falsehoods is an element of fraud offenses. *Id.* at 20. Nonetheless,

the Court found that the trial court's failure to instruct on materiality as an element was harmless

error because "overwhelming" trial evidence "incontrovertibly establishe[d] that [the

defendant's] false statements were material." *Id.* at 16. Additionally, the defense's theory did

not turn on the materiality element, and the defense declined to argue that the false statements

could be found immaterial. *Id.* In short, the erroneous instruction was harmless because the

omitted element was both "uncontested and supported by overwhelming evidence." *Id.* at 17.

Here, the instruction is neither uncontested nor supported by overwhelming evidence.

In *Dawson v. United States*, we reviewed a habeas petition in which a defendant claimed

that his convictions for unlawful firearm possession were infirm because the trial court instructed

the jury that it could convict on a theory of constructive possession. 702 F.3d 347, 349 (6th Cir.

2012). We found that giving the constructive-possession instruction was error because there

"was no testimony suggesting that [the defendant] constructively possessed the firearm." *Id.* at

350. Nonetheless, we held that the error was harmless because, "[v]iewing the record as a

whole, it [wa]s clear the jury found [the defendant] guilty based on a theory of actual possession." *Id.*

In the instant matter, we agree with the magistrate judge that this "case appears to present just the opposite situation." *Langford*, 2013 WL 459196, at *15. "It cannot be said that," had the trial court not instructed the jury that it could convict Langford as an accomplice while also failing to instruct on the mens rea of complicity, "the jury undoubtedly would have convicted petitioner of being a principal offender." *Id.* The evidence at trial, if anything, is more consistent with a theory of accomplice liability than principal liability. As the Ohio Court of Appeals noted, Jones was killed by "a bullet fired from a Ruger .357 or other large gauge handgun." *Langford*, 2010 WL 3042185, at *4. Nichole Smith testified that two men were shooting handguns at Jones and one was shooting an assault rifle. *Id.* One of the prison informants testified that Langford confessed that three men were shooting at Jones, that Langford was one of the three, and that Langford was shooting a .22-caliber handgun. *Id.* at *5. "[N]o testimony establishes that Langford fired the fatal shot." *Id.* Although the jury was entitled to draw its own inferences and convict Langford as a principal offender, "it is at least as likely, if not more so, that it convicted him as an aider and abettor." *Langford*, 2013 WL 459196, at *15. We decline to draw any conclusions about the actual basis for the jury's conviction. It suffices to note that the evidence was not great — let alone "overwhelming," *Neder*, 527 U.S. at 17 — that Langford was a principal offender. The failure to instruct on the mens rea of complicity, therefore, had a substantial influence in determining the jury's verdict.

4.

We recognize the high bar that a petitioner must clear before obtaining relief on a jury instruction claim. "The burden of demonstrating that an erroneous instruction was so prejudicial

14

that it will support a collateral attack on the constitutional validity of a state court's judgment is even greater than the showing required to establish plain error on direct appeal." *Henderson*, 431 U.S. at 154. As such, only "extraordinary cases" merit granting habeas relief "based on errors in state jury instructions." *Daniels*, 501 F.3d at 735.

In this case, the trial court failed to instruct the jury on a required element of the offense. This case does not involve any of the following: the failure to give a desired but unnecessary instruction, *Henderson*, 431 U.S. at 155; an express instruction affirmatively allowing the jury to convict on an invalid theory of guilt, *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008); the failure to instruct on an element that was uncontested at trial, *Neder*, 527 U.S. at 17; or an instruction that thrice correctly stated the law and once incorrectly stated it, *Middleton*, 541 U.S. at 437-38.

This case differs even from others involving claims that a trial court erred in incorrectly instructing on the mens rea of complicity. *Daniels v. Lafler*, for instance, involved a defendant convicted of murder and assault for helping a friend burn down a house, and killing three children. 501 F.3d at 737 (Boggs, J.). On petition for habeas relief, the petitioner argued that one passage in the jury instructions might have led the jury to convict him even if it did not believe that the prosecution proved the mens rea requirement of complicity. *Id.* at 740. In rejecting the petitioner's claim, we observed that the challenged instruction was not even necessarily inaccurate, as it "state[d] a necessary condition for guilt, not a sufficient condition." *Id.* at 742. We also noted that there was no evidence that the challenged instruction constituted an incorrect statement of Michigan law. *Id.* Here, in contrast, even Ohio's model jury instructions suggest that the trial court's failure to instruct on the mens rea of complicity was significant. The model instruction states:

> The defendant is charged with complicity in the commission of the offense of (*specify offense*). Before you can find the defendant guilty, you must find beyond

15

a reasonable doubt, that . . . the defendant (*insert culpable mental state if one is required for the commission of the principal offense*) [aided or abetted] another in committing the offense of (*specify offense*).

2-OJI-CR 523.03. Here, the trial court improperly inserted the culpable mental state before the wrong verb.

Additionally, in *Daniels*, we noted that the trial court accurately stated the mens rea requirement twice. *Daniels*, 501 F.3d at 742. This "made clear that the jury could not convict [the defendant] without finding that" he shared the mental state of the principal offense. *Id.* at 742-43. "[O]ne arguably misleading statement of the *mens rea* requirement," we said, was not "likely to have caused the jury to ignore repeated prior statements of the correct requirement." *Id.* at 743. Here, the trial court failed to properly instruct the jury on the mens rea of complicity.

## B. Pre-Indictment Delay

Langford also seeks relief on the ground that the delay between the offense and the indictment violates his right to a fair trial and to present a defense. Jones was shot on July 18, 1995. A grand jury indicted Langford on October 24, 2008. Langford argues that this thirteen-year delay was unconstitutional.

"[T]he Due Process Clause of the Fifth Amendment [may] require dismissal of [an] indictment if it were shown . . . that the pre-indictment delay . . . caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S 307, 324 (1971). It is insufficient for a petitioner merely to show that pre-indictment delay caused him actual prejudice. Due process does not "ba[r] prosecution whenever a defendant suffers prejudice as a result of preindictment delay." *United States v. Lovasco*, 431 U.S. 783, 789 (1977). Unless a petitioner can show that the prosecution sought a "tactical advantage" or acted with "reckless

16

disregard" to their rights, "prosecut[ing] a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." *Id.* at 795 n.17, 796.

Langford argues that the pre-indictment delay caused him prejudice because certain evidence was no longer available at the time of his trial. During the thirteen-year period, law enforcement destroyed the bullet that killed Jones and a cartridge box containing Langford's fingerprint. *Langford*, 2010 WL 3042185, at *2. Langford also argues that three defense witnesses died during the years prior to his indictment. Langford submits that Deshaun Williams would have testified that Langford was not involved in Jones' homicide. *Langford*, 2010 WL 3042185, at *2. Don Gentry (known as "Big Mike") purportedly had information that Langford was not the fatal shooter. *Langford*, 2010 WL 3042185, at *3. Langford submits that Paul Michael Ross (also known as "Big Mike") would have testified that he provided a .357 Magnum to an individual other than Langford. *Langford*, 2010 WL 3042185, at *3. All three individuals died prior to Langford's 2008 indictment.

The trial court applied *Lovasco* and concluded that Langford did not demonstrate actual prejudice from the delay. *Langford*, 2010 WL 3042185, at *3. The Ohio Court of Appeals, applying a four-factor test derived from *Barker v. Wingo*, 407 U.S. 514 (1972), similarly determined that Langford suffered no prejudice as a result of the delay. *Id.* at *3-5. As the magistrate judge correctly noted, the Ohio Court of Appeals applied the incorrect legal standard. *See Langford*, 2013 WL 459196, at *7. "Pre-indictment delay and post-indictment delay present separate issues." *United States v. Schaffer*, 586 F.3d 414, 424 (6th Cir. 2009). But, as noted, we do not evaluate a state court's legal reasoning, however flawed. *See Harrington*, 131 S. Ct. at 784-85. "When a federal claim has been presented to a state court and the state court has denied

17

relief, it may be presumed that the state court adjudicated the claim on the merits." *Id.* Our review is of the state court's *decision* that Langford's pre-indictment-delay claim fails.

The magistrate judge concluded, after a thorough analysis of the trial court's evidentiary hearing on Langford's motion to dismiss, that Langford may have suffered some prejudice as a result of the delay. *See Langford*, 2013 WL 459196, at *7-9. It is unnecessary to repeat that analysis here. For purposes of appeal, we assume without deciding that Langford suffered prejudice. But "the due process inquiry must consider the *reasons for the delay* as well as the prejudice to the accused." *Lovasco*, 431 U.S. at 790 (emphasis added). Absent an intent on the State's part to delay prosecution in order to gain an advantage over the defendant, no amount of prejudice can justify dismissing a case for pre-indictment delay. *Langford*, 2013 WL 459196, at *10.

The trial court determined that the prosecution's delay was not undertaken to gain a tactical advantage over Langford. The trial court stated: "I don't know how or why the State was not able to proceed with its case or why or how it chose not to pursue this case again until 2008." The Ohio Court of Appeals did not address the reasons for the delay but affirmed the trial court's ruling. *Langford*, 2010 WL 3042185, at *5. The magistrate judge correctly noted: "[T]he ultimate result reached by the state courts is entitled to AEDPA deference even if the analytical process was flawed in some respects." *Langford*, 2013 WL 459196, at *10. Langford offers no evidence suggesting that the prosecution delayed the indictment in order to gain tactical advantage over the accused. *Lovasco*, 431 U.S. at 795. Instead, Langford asks us to presume bad faith on the part of the prosecution because "the only rational explanation is that the State delayed indicting Langford in order to gain a tactical advantage." We decline to draw that inference. It is incumbent on Langford to show that the delay was prompted by a desire to gain a

18

tactical advantage at trial. *United States v. Brown*, 959 F.2d 63, 66 (6th Cir. 1992). Where a defendant has no direct evidence of bad faith, we have previously declined to infer an improper prosecutorial motive. *Id.*

Even a showing that the prosecution was prepared to proceed to trial earlier than it did is insufficient to meet the *Lovasco* standard. *Lovasco*, 431 U.S. at 793. The magistrate judge speculated that part of the thirteen-year delay may have been the product of lack of interest or lack of effort. *Langford*, 2013 WL 459196, at *11. But, the magistrate judge correctly noted, "that is not the same as conduct designed to make it more difficult for a defendant to mount a defense." *Id.* For reasons more fully set forth in the magistrate judge's Report and Recommendation, there is no basis to conclude that the prosecution delayed indictment in order to gain a tactical advantage. *See id.* The essential point is that the state court's presumptive conclusion to that effect is not unreasonable.

### C. Ineffective Assistance of Appellate Counsel

A criminal defendant has the right to effective assistance of counsel on a first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). Langford argues that he is entitled to habeas relief because his counsel on direct appeal was ineffective for failing to raise several issues. Langford argues that his appellate counsel should have raised additional arguments about the jury instructions, an argument that a witness' prejudicial comment warranted a mistrial, and an argument that the trial court erred in failing to suppress certain statements. Langford presented these arguments to the Ohio Court of Appeals in his motion to reopen the appeal. *See Langford*, 2013 WL 459196, at *16-18.

Under federal law, to establish ineffective assistance of counsel, a criminal defendant must first show that "counsel's representation fell below an objective standard of

19

reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). This inquiry looks at whether trial counsel fell below the standard of a competent attorney. *Id.* at 688-91. There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689. Secondly, to succeed on an ineffective-assistance claim, a criminal defendant must show that counsel's ineffectiveness prejudiced him. *Id.* at 692. That is, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694. It is very difficult for a defendant to surmount *Strickland*'s high bar. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1404-08 (2011) (rejecting defendant's ineffective-assistance claim even when counsel failed to perform *any* investigation before a penalty-phase hearing that resulted in a death sentence); *see also Bobby v. Van Hook*, 558 U.S. 4, 9-13 (2009) (rejecting defendant's ineffective assistance claim based on counsel's failure to investigate more thoroughly and present more mitigating evidence), *rev'g Van Hook v. Anderson*, 560 F.3d 523 (6th Cir. 2009).

### 1. Jury Instructions

Langford argues that appellate counsel was ineffective for failing to argue that the trial court erred in declining to instruct the jury that mere presence at the scene of the crime is insufficient to convict under a theory of accomplice liability. The trial court instructed the jury: "[M]ere presence can be enough [to convict] if it is intended to and does aid the primary offender." The Ohio Court of Appeals held that "the jury charge given would not have allowed findings of guilty based solely upon [Langford's] presence." *Langford*, 2013 WL 459196, at *17. The magistrate judge, independently reviewing the issue, agreed "that the jury instructions made it sufficiently clear that in order to find petitioner guilty on a complicity theory, he had to have committed some act in furtherance of the crime." *Id.* at *19. The magistrate judge further

stated: "Even the specific language to which [Langford] objected—that 'mere presence can be enough if it is intended to and does aid the primary offender'—told the jury that more than presence (*i.e.* the fact that the complicitor's presence actually aided the primary offender) was needed in order to convict." *Id.*

Langford relies on our statement that "mere presence at the scene of the crime . . . [is] not enough to convict a defendant of aiding and abetting." *United States v. Head*, 927 F.2d 1361, 1373 (6th Cir. 1991). Additionally, Langford argues that the trial court gave an incorrect instruction on causation. The trial court instructed the jury: "Cause is an act or failure to act which the natural and continuous sequence directly produces the death and without which it would not have occurred. Cause occurs when the death is the natural and foreseeable result of the act or failure to act." Langford submits that Ohio law requires a different causation instruction. The Ohio Court of Appeals denied relief, stating: "Causation was not really an issue in the case. The victim was shot to death." *Langford*, 2013 WL 459196, at *17. The magistrate judge similarly determined that this claim "would not likely have succeeded if raised on direct appeal." *Id.* at *21. We agree. Further, Langford cites no case, state or federal, indicating that the trial court incorrectly charged the jury on causation.

Finally, Langford argues that appellate counsel should have argued that the trial court erred in declining to give an instruction advising the jury that it may place diminished weight on the testimony of jailhouse informants. The trial court gave a general instruction, telling the jury to "consider the credibility of witnesses" and to consider "interest and bias, if any, together with all the facts and circumstances surrounding the testimony." The Ohio Court of Appeals denied Langford's claim on the ground that Ohio does not required a special charge to be given when cellmates or fellow inmates testify. *Langford*, 2013 WL 459196, at *18. The magistrate judge

21

determined that this issue would not have likely succeeded if raised on direct appeal. *Id.* at *21.

Langford, citing *State v. Nelson*, 303 N.E.2d 865 (1973), claims that Ohio law requires a trial

court to give a requested jury instruction if it contains a correct statement of law. *Nelson* stands

for no such proposition.

### 2. Prejudicial Comment Warranting Mistrial

On direct examination, the prosecution asked one of the prison informants why Langford

discussed his involvement in Jones' murder. The witness responded: "When he first brought it

up to me, he used to say things like he had killed someone before, so." The Ohio Court of

Appeals found that the trial court "sustained an objection to the statement because it could be

construed as referring to one or more other homicides and made it clear to the jury that they

should not consider the statement for any purpose whatsoever." *Langford*, 2013 WL 459196, at

*17. The trial court denied Langford's motion for a mistrial. Langford argues that appellate

counsel was ineffective for failing to argue that this was error.

The Ohio Court of Appeals determined that the trial court was within its discretion to

deny a mistrial. *Langford*, 2013 WL 459196, at *18. The magistrate judge noted that a trial

court's ruling to deny a mistrial "will be sustained on appeal 'absent an abuse of discretion.'" *Id.*

at *20 (quoting *State v. Treesh*, 739 N.E. 2d 749, 773 (2001)). After thoroughly analyzing the

exchange between the prosecutor and the witness at trial, the magistrate judge reasoned:

> Given the ambiguous nature of the reference, the immediate objection, the lack of
> any additional testimony or argument about other murders, and the heavy burden
> which would rest upon petitioner in the appeals court had this issue been raised —
> not to mention the appeals court's determination that it found the ruling to have
> been within the trial judge's discretion — it is not unreasonable to conclude that
> even if appellate counsel had assigned this matter as error, it would not have
> affected the outcome of petitioners appeal.

22

*Id.* Langford presents no basis for questioning this conclusion.

### 3. Suppression of Langford's Statements

Langford also argues that appellate counsel was ineffective for failing to argue that the trial court erred in not suppressing certain statements that Langford made to law enforcement in violation of *Miranda*. In these statements, Langford sometimes acknowledged being nearby the scene of the crime but denied being the shooter. *Langford*, 2013 WL 459196, at *17. Langford did not testify at trial. The Ohio Court of Appeals denied Langford's claim, stating: "Nothing in the record before us indicates that the trial court should have sustained the motion to suppress Langford's statements or that the statements were actually harmful to Langford's case." *Id.* The magistrate judge determined that even if any statements about being near the crime scene merited suppression, "there was enough other evidence placing petitioner at or near the scene of the crime that any statements in which he conceded as much would have been largely cumulative." *Id.* at 21.

Our review of a state court's determination that a criminal defendant received effective assistance is particularly deferential. We do not apply *Strickland* directly. Rather, the pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. *Harrington*, 131 S. Ct. at 785. Were we to apply *Strickland* directly, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. *Id.* The combination of the highly deferential standards of *Strickland* and of §2254(d) makes for "doubly deferential judicial review." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). In this case, the Ohio court was not unreasonable in concluding that Langford's counsel was not ineffective for failing to raise the above issues.

Additionally, appellate attorneys are not required to raise all claims desired by a defendant if counsel, as a matter of professional judgment, decides not to present those points. *Jones v. Barnes*, 463 U.S. 745, 751 (1983); *see also Caver v. Straub*, 349 F.3d 340, 348 (6th Cir. 2003). Langford also cannot prevail on any ineffective-assistance claim if the underlying issues lack merit. *See Moore v. Mitchell*, 708 F.3d 760, 777 (6th Cir. 2013). Accordingly, Langford cannot obtain habeas relief on this ground.

## IV. CONCLUSION

Supreme Court law requires that a jury find a defendant guilty of every element of the crime charged. *Gaudin*, 515 U.S. at 522-23. Under Ohio law, an accomplice must act with the same criminal intent as a principal guilty of the crime. *Johnson*, 754 N.E.2d at 801. The trial court did not instruct the jury that complicity has a mens rea element. The state court's decision to the contrary is unreasonable in light of the language of the jury instructions and the record as a whole. The state court's decisions on Langford's other claims, though perhaps not free from questioning, are not unreasonable applications of Supreme Court law.

We agree with the magistrate judge's thorough Report and Recommendation and with the district court's decision. Accordingly, we **AFFIRM** the district court's judgment.

**BOGGS, Circuit Judge, dissenting.** The *actual* jury instruction that was given read: "Before you can find the defendant guilty of a crime as a complicitor or an aider and abettor, you must find . . . that . . . the defendant aided or abetted another in purposely committing the offenses." All parties agree that the *ideal* jury instruction would have read: "Before you can find the defendant guilty of a crime as a complicitor or an aider and abettor, you must find . . . that . . . the defendant purposely aided or abetted another in committing the offenses."[1] Because I do not believe that the misplacement of the word "purposely" by five words gives rise to habeas relief, I respectfully dissent.

On October 23, 2009, the defense rested its case. The trial judge, defense counsel, and the prosecutor then held a preliminary discussion about the jury instructions. Langford's counsel told the judge that the prosecutor had given him a proposed version of the jury instructions the previous day. Langford's counsel stated that he had reviewed the prosecution's version but had some objections and requested modifications. The judge invited defense counsel and the prosecutor into chambers to do a "preliminary sort through those issues." Both counsel agreed to do so, and the judge adjourned court.

Court resumed later that afternoon, and the parties conducted an on-the-record review of the jury instructions. The judge noted that defense counsel and the prosecutor had provided the judge separate copies of the jury instructions. As the judge explained, defense counsel "integrated those jury instructions to include additional instructions that he would like to have provided to the jury as well as deletions that he would like for the Court to consider that were

---

[1] This instruction tracks Ohio's model jury instruction, which states: "Before you can find the defendant guilty, you must find beyond a reasonable doubt, that . . . the defendant (insert culpable mental state if one is required for the commission of the principal offense) [aided or abetted] another in committing the offense of (specify offense)." 2-OJI-CR 523.03.

originally provided by the State." The parties agreed to work from that integrated copy in their preliminary review of the jury instructions.

During this discussion, the judge asked counsel if they had any objections to the complicity section of the proposed jury instructions. Langford's counsel flyspecked the very issue that now forms the basis of Langford's habeas petition. The following discussion occurred among the judge, the prosecutor (Mr. Lowe), and defense counsel (Mr. Gatterdam).

> THE COURT: I think that there was the complicity issue that was discussed in chambers.
>
> . . .
>
> MR. LOWE: Okay. Judge, the complicity -- I think Mr. Gatterdam agrees that we can do and/or, but I think what we decided to do was I think we were going to take out "solicited or procured another to commit the offense or," and I think we are just going to go with "aiding and abetting another in committing the offenses."
> THE COURT: Okay. Mr. Gatterdam, do you see where that text is, or do you have any comment?
> MR. GATTERDAM: I do. I guess I preliminarily just want to make sure that -- and until we see it, I guess I don't know whether I can respond.
> *The complicity section says that you need to insert the culpable mental state and then go into the aided or abetted language and definitions,* and I presume that will be done we revise.
> MR. LOWE: Yes.
> MR. GATTERDAM: So I probably will have no objection, but as it is now, I'm not clear.
> MR. LOWE: We agree a mental state needs to be in there.

(emphasis added). Thus, it appears that this version of the proposed jury instructions omitted the mens rea element for complicity. Langford's counsel specifically requested that the court "insert the culpable mental state and *then* go into the aided or abetted language and definitions." The judge and both parties agreed to conduct a second on-the-record review of the revised jury instructions prior to closing arguments the following week. At the end of the discussion,

26

Langford's counsel assumed responsibility for e-mailing a revised version of the jury instructions to the prosecution. The judge then adjourned court until Monday afternoon.

Court resumed as scheduled on Monday afternoon. The judge noted that she had received a revised version of the jury instructions from the prosecution. The judge and the parties conducted a second on-the-record review of the instructions, including the complicity instruction. The following discussion occurred:

> THE COURT: Anything else, Counsel, we need to change?
> MR. GATTERDAM: I have a typo on page 11. I don't know if you're at page 11 now or 12. It was the last full paragraph, starts with, "Before you can find the defendant of a crime as a complicitor."
> THE COURT: Yes. That's still page 11.
> MR. GATTERDAM: *On or about the 18th day of July, blah-blah, Agg. Murder or Murder or aided and abetted another in "knowingly committing" instead of "committed."*
> THE COURT: All right. Got you. Okay.

(emphasis added). Thus, Langford's counsel examined the *very sentence* that is now at issue— closely enough, in fact, to catch a typo. And yet counsel made no objection about the word "purposely" being in the wrong place in the sentence.

Additionally, any error in the jury instructions is harmless error, in light of the evidence that was presented at trial. A trial court's failure to charge an element of an offense is subject to harmless-error analysis. *Neder v. United States*, 527 U.S. 1, 12 (1999). The Supreme Court has, in particular, recognized that a trial court's failure to instruct fully and accurately about the necessary mens rea for accomplice liability is reviewed for harmless error. *See California v. Roy*, 519 U.S. 2, 3–4 (1996). On habeas, an error is harmless unless it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).

27

In *Dawson v. United States*, we reviewed a habeas petition in which a defendant claimed that his convictions for unlawful firearm possession were invalid because the trial court instructed the jury that it could convict on a theory of constructive possession. 702 F.3d 347, 349 (6th Cir. 2012). We found that giving the constructive-possession instruction was error because there "was no testimony suggesting that [the defendant] constructively possessed the firearm." *Id.* at 350. Nonetheless, we held that the error was harmless because "[v]iewing the record as a whole, it [wa]s clear the jury found [the defendant] guilty based on a theory of actual possession." *Ibid.*

Here, the evidence at trial established that the "F and L boys" beat up Langford and that Langford, therefore, had a motive to seek revenge. Additionally, Nichole Smith testified that she witnessed Langford shooting at the F and L group. And two federal prisoners, Jason Arnold and Isaac Jackson, testified that Langford confessed to his involvement in Jones's death. The jury certainly was entitled to disbelieve this testimony, but there was no evidence at all to support conviction under a theory of accomplice liability where Langford, say, performed in a production of *Hamlet* and, thereby, unwittingly motivated Jones's shooter to take purposeful action and to avenge immediately the attack on Langford. That is, there was simply no evidence that would have allowed the jury to convict Langford under a strict-liability conception of complicity.

It is true that the instruction that was given does not track Ohio's model instruction. But "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Estelle v. McGuire*, 502 U.S. 62, 71–72 (1991). "Federal habeas courts therefore do not grant relief, as might a state appellate court, simply because the instruction may have been deficient in comparison to the [state] model." *Id.* at 72. The essential question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due

28

process." *Ibid.* It is insufficient "that the instruction is undesirable, erroneous, or even universally condemned." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974) (internal quotation marks and citation omitted).

Our court has said that "we may grant the writ based on errors in state jury instructions only in extraordinary cases." *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007). In *Daniels*, we denied a claim similar to Langford's "even though one sentence of the instructions contained a confusing and arguably misleading statement of the law." *Id.* at 737. Here, the jury instruction that was given was not the exact one that ideally would have been given. It was not so wrong that *any* of those involved, whose discussions indicated that they were trying to get it right, noticed the displacement of one word. That does not provide a basis for habeas relief. We must consider only "whether there is a *reasonable likelihood* that the jury has applied the challenged instruction in a way that violates the Constitution." *Estelle*, 502 U.S. at 72 (internal quotation marks omitted) (emphasis added). Because I do not believe that there is such a likelihood in light of the record as a whole, I respectfully dissent.

29