[Cite as *State v. Mincey*, 2018-Ohio-662.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160565 |
| | | TRIAL NO. B-1406170B |
| Plaintiff-Appellant, | : | |
| | | *O P I N I O N.* |
| vs. | : | |
| | : | |
| MICHELLE MINCEY, | : | |
| Defendant-Appellee. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  February 23, 2018

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, *Ronald Springman* and *Sean Donovan,* Assistant Prosecuting Attorneys, for Plaintiff-Appellant,

*Michaela M. Stagnaro*, for Defendant-Appellee.

**MILLER, Judge.**

{¶1} After her first trial ended in a mistrial, and following a second trial, a jury found Michelle Mincey guilty of felonious assault for being complicit in throwing sulfuric acid on Shailah Robinson's face and body. The trial court sentenced Mincey to the maximum term of eight years in prison. We affirm.

## The State's Case

{¶2} Mincey's teenage daughters, Deajah and Shay, were embroiled in an on-going dispute with Robinson's sister, Tynia Jones, and others culminating in a large street fight. Roughly an hour before this melee, Deajah fought with one of Tynia's friends, Tonya Miller. Tynia witnessed the earlier fight, and cell phone video of the fight was admitted at trial.

{¶3} The street fight initially involved Robinson, Tynia, Deajah, Shay and a few other women and girls. Mincey, along with her sister Denna and their cousin, Latressa Conley, ran out of Mincey's home and joined in. Mincey carried a stun gun, Conley a spray bottle of isopropyl alcohol, and Denna a glass jar of a concentrated sulfuric acid solution. According to Robinson, in the midst of the fight, Mincey pointed at Robinson and said, "It's that bitch right there," prompting Denna to throw acid onto Robinson's face. As Robinson tried to wipe the acid from her face, Denna threw the remainder of the jar's contents onto Robinson's body.

{¶4} Tynia corroborated Robinson's testimony, and added that Denna's first throw was underhanded, and the second, overhanded. Robinson testified that the acid made her feel like her body was "on fire," and that her pain level on a scale of 1-to-10 was "over 10." She was hospitalized for two-and-a-half weeks and still experiences pain daily.

{¶5} Officer Kurtz responded to the scene. Mincey gave him permission to search her house. Kurtz encountered Denna on the second floor as she exited from the bathroom, appearing to have just showered. The officer found a bottle of "Liquid Fire" drain cleaner in Mincey's home. It was later discovered that there were burns on Denna's hand and back.

{¶6} Dana Greely, a crime lab technician, tested the Liquid Fire and remnants of acid collected from the scene. Greely testified that Liquid Fire is a sulfuric acid solution, and that the liquid from the crime scene was also a sulfuric acid solution. She concluded that Denna's shirt and Robinson's clothing had been burned with sulfuric acid. Greely could not say whether the acid thrown on Robinson was the Liquid Fire found in Mincey's home.

### Mincey's Defense

{¶7} In her first trial, Mincey had had expert witness Larry Dehus appointed at her request to test the evidence found at the scene and the Liquid Fire. Dehus's report contained conclusions very similar to Greely's. She did not call Dehus as a witness in either trial. Prior to her second trial, Mincey moved the trial court to appoint a second expert witness, who Mincey claimed would possibly be able to testify that the Liquid Fire from her home was not the acid thrown on Robinson. Her motion was denied.

{¶8} Mincey's defense centered on casting doubt on the identity of Denna as the acid-thrower, and Mincey as the one who told Denna to throw the acid on Robinson. The defense argued that Denna could not have carried a jar of acid to the fight because an eye-witness testified that Denna had been physically fighting before the acid was thrown. Denna admitted that there were burns on her hands and back,

but explained that the burn on her hand was from an oven and that the burn on her back occurred when someone behind her at the fight threw the acid at Robinson.

## Analysis

{¶9}  *Admission of the cell phone video.* In her first assignment of error, Mincey contends that the trial court erred when it admitted into evidence the cell phone video of the earlier fight between Mincey's daughters and Tonya Miller. Mincey raises three arguments: the video (1) was not properly authenticated; (2) was irrelevant and/or unduly prejudicial; and (3) constituted impermissible "other acts" evidence.  None of these arguments is meritorious.

{¶10}  We review the trial court's admission of the video for an abuse of discretion.  *See State v. Sage*, 31 Ohio St.3d 173, 510 N.E.2d 343 (1987), paragraph two of the syllabus. An abuse of discretion is more than a mere error in judgment; it suggests that the court acted in an unreasonable, arbitrary, or unconscionable manner.  *State v. Adams*, 62 Ohio St.2d 151, 157-158, 404 N.E.2d 144 (1980).

{¶11}  "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."  Evid.R. 901(A); *Great Seneca Fin. v. Felty*, 170 Ohio App.3d 737, 2006-Ohio-6618, 869 N.E.2d 30, ¶ 9 (1st Dist.). Tynia witnessed the earlier fight.  She testified that the video was a fair and accurate depiction of the fight.  This was sufficient foundation to admit the video.  *Midland Steel Prods. Co. v. U.A.W. Local 486*, 61 Ohio St.3d 121, 129, 573 N.E.2d 98 (1991).

{¶12}  The video was relevant.  "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  Evid.R. 401.  The question of whether evidence is relevant is "one

which the trial court can resolve based on common experience and logic." *State v. Lyles*, 42 Ohio St.3d 98, 99, 537 N.E.2d 221 (1989). Here, the trial court stated that evidence of the earlier fight provided a possible motive for the later street fight. We find no error in this determination.

{¶13} Excluding this video was not required by Evid.R. 403(A). That rule provides, "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." *See State v. Combs,* 62 Ohio St.3d 278, 284, 581 N.E.2d 1071 (1991). Mincey claims that the video was unduly prejudicial because its only purpose was to show that Mincey must have been angry at the girls involved in the earlier fight against her daughters. We fail to see how the probative value of this evidence was substantially outweighed by the danger of unfair prejudice.

{¶14} Finally, Mincey contends that the video contained prohibited "other acts" evidence under Evid.R. 404(B). This objection was not raised in the trial court. Mincey has therefore forfeited all but plain error on appeal. *See State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 3. Forfeited error "is not reversible error unless it affected the outcome of the proceeding and reversal is necessary to correct a manifest miscarriage of justice." *Id.* On appeal, Mincey has not argued, let alone demonstrated, that "but for" the alleged error the outcome of her trial would have been otherwise, or that reversal is necessary to correct a manifest miscarriage of justice. *See Rogers* at ¶ 3; *State v. Harrison,* 122 Ohio St.3d 512, 2009-Ohio-3547, 912 N.E.2d 1106, ¶ 61; *State v. Long,* 53 Ohio St.2d 91, 97, 372 N.E.2d 804 (1978).

{¶15} Mincey's first assignment of error is overruled.

{¶16}  *Expert Witness.* In her second assignment of error, Mincey argues that the trial court violated her right to due process by overruling her motion to appoint a second expert witness.[1]  According to her proffer, her requested expert, Professor Thomas Ridgway, "would possibly allow elimination" of the Liquid Fire found in her house as the source of the acid that burned Robinson.

{¶17}  This was Mincey's second request for an expert to test the acid found at the scene.  In Mincey's first trial, that ended in a mistrial, the court had appointed expert witness Dehus.  Dehus tested the Liquid Fire found in Mincey's home, acid residue found at the scene, and Robinson's and Michelle Mincey's clothing.  Dehus's report concluded that the Liquid Fire was a concentrated sulfuric acid solution, that the acid residue was sulfuric acid residue, and that the chemical damage to Robinson's and Denna Mincey's clothing was indicative of sulfuric acid.   Dehus could not determine whether the acid found at the scene and on the tested clothing was from the Liquid Fire found in Mincey's home.  Dehus did not testify at either trial.  The state's expert, Greely, who testified in Mincey's second trial, came to similar conclusions as Dehus after she tested the evidence from the scene.  However, according to Mincey, Ridgway would be able to perform more sensitive testing than either Dehus or Greely that could possibly exclude the Liquid Fire as the agent that burned Robinson.

{¶18}  As a guarantee of due process, indigent defendants are entitled to receive the "raw materials" and the "basic tools of an adequate defense."  *Ake v. Oklahoma*, 470 U.S. 68, 77, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), quoting *Britt v. North Carolina*, 404 U.S. 226, 227, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971).  However, due process, under the Fifth and Fourteenth Amendments to the United States Constitution and Section 16,

---

[1] The trial court never put on an entry overruling the motion.  We may presume that it did so sub silentio. *See State v. Reid*, 1st Dist. Hamilton No. C-050465, 2006-Ohio-6450, ¶ 8.

Article I of the Ohio Constitution, does not require the state to provide an expert to an indigent defendant in the absence of a particularized showing of need. *State v. Mason*, 82 Ohio St.3d 144, 150, 694 N.E.2d 932 (1998). A defendant must demonstrate "a reasonable probability that an expert would aid in his defense, and that denial of expert assistance would result in an unfair trial." *Id.,* citing *Little v. Armontrout*, 835 F.2d 1240, 1244 (8th Cir.1997). The mere possibility of aid from an expert is not enough. *Id.*; *see State v. Broom*, 40 Ohio St.3d 277, 283, 533 N.E.2d 682 (1988). We review the trial court's decision whether to appoint an expert witness for an abuse of discretion. *See State v. Jenkins*, 15 Ohio St.3d 164, 473 N.E.2d 264 (1984), paragraph four of the syllabus.

{¶19} Here, Mincey did not demonstrate more than a "mere possibility" that Ridgway would have aided in her defense. Mincey wanted Ridgway to counter the coroner's analyst's results. Her first expert was unable to do so. Both Greely and Dehus came to the same conclusions after testing—i.e. that Liquid Fire contained a concentrated sulfuric acid solution and that the evidence collected from the scene was sulfuric acid. Greely's and Dehus's results were inconclusive as to whether the Liquid Fire was the acid used in the attack. Mincey did not show how more testing would have led to a different result. Her argument in support of a second expert was speculative, raising only the "possibility," and not a "reasonable probability" that yet more testing would yield a result favorable to Mincey. Further, Mincey had an opportunity to adequately cross-examine the coroner's analyst about the lab results, and thereby cast doubt on the analysis or the lab results themselves. And there is no indication in the record that Mincey's first expert was unavailable, had she wished to call her own expert witness.

{¶20} Additionally, while the presence of Liquid Fire in Mincey's home was significant, the heart of the state's case was other evidence—primarily eyewitness testimony—connecting Mincey to the crime. Mincey was convicted of complicity for directing her sister to throw the acid on Robinson. Where the acid came from was less important. She therefore cannot show that the trial court abused its discretion and that the failure of the court to appoint a second expert resulted in an unfair trial. We overrule the second assignment of error.

{¶21} *Prosecutorial Misconduct.* In her third assignment of error, Mincey claims that prosecutorial misconduct deprived her of a fair trial. She alleges that the assistant prosecuting attorney committed misconduct by (1) trying his case to the jury during voir dire, (2) introducing cell phone video of the fight, (3) making inaccurate statements during closing argument, and (4) misstating facts in the state's sentencing memorandum.

{¶22} The test for prosecutorial misconduct is whether the remarks or actions were improper, and if so, whether they affected the accused's substantial rights. *State v. Lott*, 51 Ohio St.3d 160, 165, 555 N.E.2d 293 (1990). To constitute reversible error, the alleged misconduct must have deprived the defendant of a fair trial. *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 140; *State v. Neeley*, 143 Ohio App.3d 606, 621, 758 N.E.2d 745 (1st Dist.2001).

{¶23} The admission of the cell phone video was a decision made by the trial court, not the prosecuting attorney. Even if the sentencing memorandum contained inaccurate facts, it was submitted to the court after Mincey had been found guilty. It could not have had an effect on the fairness of Mincey's trial. Therefore, these allegations cannot form the basis for claims of prosecutorial misconduct.

{¶24} Next, Mincey makes a general reference in her brief to a few instances where the trial court admonished the prosecuting attorney during voir dire for speaking about the particulars of the case. She has not demonstrated how these statements deprived her of a fair trial. And, upon a review of the record, we hold that they did not.

{¶25} Finally, Mincey claims that the prosecuting attorney made several improper statements during closing argument. There were no objections to these statements, and Mincey has not argued or shown plain error on appeal. *See Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 3; *Long,* 53 Ohio St.2d at 97, 372 N.E.2d 804.

{¶26} Mincey's third assignment of error is overruled.

{¶27} *Jury Charge.* In her fourth assignment of error, Mincey argues that the trial court left out an element of "complicity" in its charge to the jury. This presents a question of law that we review de novo. *Cincinnati v. Flannery*, 176 Ohio App.3d 181, 2008-Ohio-1437, 891 N.E.2d 775, ¶ 11 (1st Dist.).

{¶28} In pertinent part, "complicity" is defined in R.C. 2923.03(A)(2) as "no person acting with the kind of culpability required for the commission of an offense shall * * * aid or abet another in committing the offense." The jury was instructed using this exact language. The trial court also instructed the jury that "knowingly" was the mens rea for felonious assault, and properly defined "knowingly." The defense submitted proposed jury instructions on the complicity charge that inserted the mens rea of "knowingly" into the complicity instruction, itself. Mincey contends that, by not inserting the word "knowingly" into its complicity instruction itself, the court left out an element of this crime. It did not.

**{¶29}** The dissent goes beyond the assigned error by discussing the effectiveness of the instruction. Mincey challenges only whether a mens rea instruction was given. It was. The dissent's analysis of the unassigned error suffers from two significant flaws.

**{¶30}** First, the dissent treats the Ohio Jury Instructions ("OJI") as law. OJI is merely nonbinding guidance. *State v. Napier*, 105 Ohio App.3d 713, 720, 664 N.E.2d 1330 (1st Dist.1995). OJI is " 'the product of a committee of the Ohio Judicial Conference which suggests model instructions, but which have no force or effect as a rule of law. They are merely the suggestions of one or more trial or appellate judges as to what those judges feel is an appropriate instruction.' " *Id.* at 720-721, quoting *State v. Mitchell*, 10th Dist. Franklin No. 88AP-695, 1989 WL 47083 (May 2, 1989); *see State v. Burchfield* 66 Ohio St.3d 261, 263 611 N.E.2d 819 (1993) (recognizing that OJI should not be "blindly applied"). The proper inquiry is whether the instruction was proper.

**{¶31}** *State v. Skatzes* is informative. 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215. In *Skatzes*, the Supreme Court of Ohio considered the following instruction given under the former complicity statute, R.C. 2923.04: " 'Before you can find the defendant guilty, you must find beyond a reasonable doubt that * * * the defendant, acting with the required culpable mental state for the particular offense, * * * conspired with another to commit the offenses.' " *Id.* at ¶ 58. The court concluded that the instruction was not erroneous because the language tracked the complicity statute and was not ambiguous. *Id.* The court also held that the "jurors would have understood this instruction to mean that they should apply the culpable mental state for the offense that they found to be the object of the conspiracy." *Id.*

{¶32} The same reasoning applies here. The trial court followed the language of the statute. The culpable mental state was referenced in connection with the felonious assault charge—which was given by the court immediately following the complicity instruction. The jurors would have understood that they should apply "knowingly" to the complicity charge. Thus, the court included all elements in its charge to the jury.

{¶33} Second, the dissent's laser focus on the complicity instruction alone is too narrow. After completing the lengthy complicity instruction, the trial court next instructed the jury on felonious assault, including the mens rea. Viewing the instructions as a whole, as required, it is beyond dispute that the jury was instructed that the mens rea for Mincey's complicity charge was the same as the mens rea for felonious assault—"knowingly"—which was given. *See State v. Price*, 60 Ohio St.2d 136, 398 N.E.2d 772 (1979), paragraph four of the syllabus. ("A single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge."). The dissent's insistence that the mens rea be charged differently isn't based in the law.

{¶34} Because the jury was instructed on all elements of complicity, we overrule this assignment of error.

{¶35} *Ineffective Assistance of Trial Counsel.* In the fifth assignment of error, Mincey contends that she was denied the effective assistance of trial counsel because counsel failed to object to what Mincey contends were improper remarks by the assistant prosecutor during closing argument. To establish ineffective assistance warranting reversal of a conviction, Mincey must show that counsel's performance was deficient, and that the deficient performance deprived her of a fair trial. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674

(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus. She has not done so.

{¶36} Mincey asserts that counsel should have objected to a number of statements to the effect that Mincey had been angry all day and that she had been looking for a fight. It is well-established that during closing argument, the prosecution is given wide latitude to convincingly advance its strongest arguments. *State v. Phillips,* 74 Ohio St.3d 72, 90, 656 N.E.2d 643 (1995). Mincey has not explained how these statements were improper, or deprived her of a fair trial.

{¶37} Mincey also claims that the assistant prosecuting attorney misstated the law. Even if this occurred, the trial court correctly informed the jury that "[i]t's the duty of the court to instruct you on the law. That is, to instruct you on the law which you must apply to the facts as you determine them to be in order to arrive at your verdict." Jurors are presumed to follow the court's instructions. *Pang v. Minch*, 53 Ohio St.3d 186, 195, 559 N.E.2d 1313 (1990). Thus, Mincey has failed to establish prejudice resulting in an unfair trial. We overrule her fifth assignment of error.

{¶38} ***Weight and Sufficiency of the Evidence.*** In her sixth assignment of error, Mincey argues that her conviction was against the weight and sufficiency of the evidence. It was not. Mincey was convicted of being complicit with her sister, Denna, in committing felonious assault. Mincey's argument on appeal centers on her perceived weaknesses in the state's case against Denna. Eyewitness testimony established that Denna came to the fight with a jar filled with liquid. In regard to Mincey, the state presented evidence that, upon seeing Robinson, Mincey said to Denna, "That's the bitch right there," which prompted Denna to throw the contents of the jar on Robinson's face and body. Robinson testified that she was

12

severely injured as a result of this attack. Later testing confirmed that there were sulfuric acid burns on Robinson's and Denna's clothing. Denna also had burns on her hands and back.

{¶39} Viewing this evidence in a light most favorable to the prosecution, we hold that a rational trier of fact could find that the state proved its case against Mincey beyond a reasonable doubt. *See State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. And although Mincey presented a version of events that, if believed, would have exonerated her, in weighing the evidence presented there is no indication that the jury lost its way in choosing to believe the state's evidence instead. While Denna denied that she threw the acid, and pointed to the fact that there were burns on her back, there was testimony that Denna had thrown the acid overhanded, thereby explaining how acid could have spilled out of the jar onto her back. *See State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983). We find no error in the jury's verdict. This assignment of error is overruled.

{¶40} ***Motion for a New Trial.*** In her seventh assignment of error, Mincey argues that the trial court erred when it denied her motion for a new trial. She alleges that the trial court should have granted her motion because (1) the court erroneously instructed the jury on complicity, (2) the court erred in admitting evidence of the earlier altercation between Mincey's daughters and Tonya Miller, (3) the court erroneously denied Mincey's request for an expert witness, and (4) the state failed to present sufficient evidence to convict Mincey.

{¶41} We have evaluated all of these arguments and determined that there was no prejudicial error. We therefore overrule this assignment of error.

13

{¶42} *Mincey's Sentence.* In her eighth assignment of error, Mincey asserts that the trial court erred when it sentenced her to the maximum term of eight years' incarceration. She claims that the court did not properly consider the purposes and principles of sentencing in R.C. 2929.11 and 2929.12 before imposing sentence, and that her sentence is therefore clearly and convincingly contrary to law. *See State v. White,* 2013-Ohio-4225, 997 N.E.2d 629, ¶ 12 (1st Dist.). This argument has no merit.

{¶43} The trial court did not specifically reference R.C. 2929.11 or 2929.12 before sentencing Mincey. However, the court did state on the record that it had "reviewed everything," and that Mincey had committed "the worst possible offense." *See* R.C. 2929.12(B). The court also noted that Robinson suffered serious physical and emotional harm, and that the maximum sentence was necessary to prevent future crime and to protect the public. *See* R.C. 2929.12(B)(2) and 2929.11. Finally, the court indicated that Mincey had shown no remorse, and was still acting in a threatening manner towards others. It is evident from these statements that the court considered R.C. 2929.11, and some of the factors in R.C. 2929.12. And we may presume from a silent record that the court considered the balance of the R.C. 2929.12 factors—unless Mincey can demonstrate otherwise. *See State v. Kennedy,* 2013-Ohio-4221, 998 N.E.2d 1189, ¶ 118 (1st Dist.). She has not.

{¶44} Finally, Mincey claims that the trial court erred when it failed to notify her that she would be required to submit to DNA testing, that she could not ingest or be injected with a drug of abuse, and that she would be required to submit to random drug testing in prison. This was harmless error. *See State v. Taylor,* 1st Dist. Hamilton No. C-150488, 2016-Ohio-4548, ¶ 5-6.

{¶45} Mincey's eighth assignment of error is overruled.

**Conclusion**

{¶46} All assignments of error having been overruled, the trial court's judgment is affirmed.

Judgment affirmed.

**MYERS, J.,** concurs separately.

**ZAYAS, P.J.,** concurs in part and dissents in part.

**MYERS, J.,** concurring separately.

{¶47} I concur, but write separately to address the admissibility of the cell phone video. I would find that the trial court erred in admitting the cell phone video which showed a fight earlier in the day between Mincey's daughters and Tonya Miller. Mincey was not present during the fight, and there is no testimony that she ever saw the video prior to the altercation at issue here. Thus, what specifically happened at the fight is irrelevant. What is relevant is Mincey's knowledge that a fight occurred and any information that was conveyed to her about the fight. While I would find that the trial court abused its discretion in admitting this video, I would find that the error was harmless.

**ZAYAS, P.J.,** concurring in part and dissenting in part.

{¶48} I concur with the separate concurring opinion with respect to the admissibility of the cell phone video and the majority's resolution of the first, third, fifth, sixth, and eighth assignments of error. However, I respectfully dissent from its conclusions as to the fourth and seventh assignments of error regarding the erroneous jury instructions, and from the decision to affirm the trial court's judgment. Appellant argues that the complicity instructions omitted the mental

capacity, an element of the crime, which affected her substantial rights. The majority determines that the trial court's failure to instruct the jury on the proper mens rea for complicity did not omit an essential element of the offense. I respectfully disagree with this conclusion.

### Requested Jury Instruction

{¶49} Mincey was charged with the principal offense of felonious assault, but the state's theory of the case was that Mincey aided and abetted her sister Denna by providing the acid, pointing to Robinson, and stating, "It's that bitch right there."

{¶50} Both Mincey and the state filed several proposed jury instructions. Mincey filed written requested jury instructions with a complicity definition that included the mens rea of knowingly, and an instruction that explained to the jury that to find Mincey guilty, the state had to prove the mental state of knowingly beyond a reasonable doubt. The court held an off-the-record conference to discuss the instructions and objections. Afterwards, Mincey discussed her proposed instructions and objected to the court's instruction that criminal intent may be inferred from the defendant's presence. Mincey also objected to an instruction on attempting to commit an offense because it did not apply to the facts of Mincey's case. The court then stated on the record that the parties thoroughly reviewed all of the objections and instructions in conference, and the court determined the final jury instructions after the discussion. Because Mincey specifically objected to the instruction regarding criminal intent, and the trial court stated it was fully aware of Mincey's objections, she did not waive her objection. *See State v. Wolons*, 44 Ohio St.3d 64, 67, 541 N.E.2d 443 (1989) (holding that "in a criminal case, where the record affirmatively shows that a trial court has been fully apprised of the correct law governing a material issue in dispute, and the requesting party has been unsuccessful

16

in obtaining the inclusion of that law in the trial court's charge to the jury, such party does not waive his objections to the court's charge by failing to formally object thereto."); *Presley v. Norwood*, 36 Ohio St.2d 29, 33, 303 N.E.2d 81 (1973).

{¶51} The trial court accepted the state's proposed jury instruction, and rejected Mincey's requests.  I note that the written jury instructions that the trial court gave to the jury were not included in the record on appeal as required by R.C. 2945.10 (G).  However, I presume the written instructions were the same as the oral instructions since both parties reviewed the written instructions, and neither party alleged a discrepancy between the two.  *See State v. Smith*, 8th Dist. Cuyahoga No. 82710, 2004-Ohio-3479, ¶ 73 (concluding the trial court's failure to preserve the written jury instructions was not error when both parties reviewed the written instructions and did not identify a variation between the oral and written instructions).

{¶52} A review of the trial transcript confirms that the trial court's instruction on complicity mirrored the written proposed instruction submitted by the state.  The trial court instructed the jury as follows:

> Now, this is the definition of complicity, which you heard something
>
> about.  No person, **acting with the kind of culpability required**
>
> **for the commission of an offense**, shall do any of the following:
>
> Solicit or procure another to commit the offense;
>
> Aid or abet another in committing the offense;
>
> Conspire with another to commit the offense;
>
> Cause an innocent or irresponsible person to commit the offense.

(Emphasis added.)

17

**{¶53}** Next, the court defined the terms solicit, procure, and conspire, and explained that "aid or abet means support, assist, encourage, cooperate with, advise, or incite." The court also instructed that, "The State need not establish the principal's identity, but need only prove that a principal committed the offense. **Defendant's criminal intent may be inferred from the defendant's presence, companionship, and conduct before and after the offense is committed."** (Emphasis added.)

**{¶54}** Finally, the court's concluding instruction regarding how to reach a verdict explained that, "If you find beyond a reasonable doubt that Denna Mincey and/or Michelle Mincey was complicit with another in the commission of a felonious assault, she is to be regarded as if she were the principal offender and is just as guilty as if she had personally performed every act constituting the offense of felonious assault." The court then proceeded to instruct the jurors on felonious assault.

## Ohio Jury Instructions on Complicity

**{¶55}** Prior to 2016, OJI had one jury instruction for complicity whether the defendant was charged under R.C. 2923.03 or charged in terms of the principal offense. *Former Ohio Jury Instructions*, CR Section 523.03. In 2016, OJI was amended to create two instructions, the instruction for defendants charged with the complicity statute,[2] and a new instruction for defendants charged in terms of the principal offense. Both require the court to include the culpable mental state in the concluding instruction.

---

[2] That instruction states, in relevant part, that:
The defendant is charged with complicity in the commission of (*specify offense*). Before you can find the defendant guilty, you must find beyond a reasonable doubt that * * * the defendant (*insert culpable mental state if one is required for the commission of the principal offense*). *Ohio Jury Instructions*, CR Section 523.03(A) (Rev. 2/6/16).

**{¶56}** When the defendant is charged in terms of the principal offense under a complicity theory, the model instruction states:

1. The state of Ohio has presented a theory that the defendant acted in complicity with the principal offender in the commission of (*insert name of offense[s]*). A person who is complicit with another in the commission of a criminal offense is regarded as guilty as if he/she personally performed every act constituting the offense. This is true even if he/she did not personally perform every act constituting the offense or was not physically present at the time the offense was committed.

2. Before you can find the defendant guilty of complicity in the commission of (*insert name of offense[s]*), you must find beyond a reasonable doubt, that * * * the defendant (*insert applicable culpable mental state if one is required for the commission of the principal offense*)

   (*Use appropriate alternative[s]*)

   (A)(1) (solicited) (procured) another to commit the offense of (*specify offense*);

   (*or*)

   (A)(2) aided or abetted another in committing the offense of (*specify offense*);

   (*or*)

   (A)(3) conspired with another to commit the offense of (*specify offense*);

   (*or*)

(A)(4) caused an (innocent) (irresponsible) person to commit the offense of (*specify offense*).

{¶57}  The jury should not be instructed on conspiracy unless the defendant was charged with conspiracy in violation of R.C. 2923.01.  After providing the jury with the appropriate alternative, the trial court is required to define the culpable mental state to the jury.  Next, the jury should be instructed on "aided or abetted" as follows:

Before you can find the defendant guilty of complicity by aiding and abetting, you must find beyond a reasonable doubt that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal offender in the commission of the offense and that the defendant shared the criminal intent of the principal offender.  Such intent may be inferred from the circumstances surrounding the offense including but not limited to, presence, companionship and conduct before and after the offense was committed.  The mere presence of the defendant at the scene of the offense is not sufficient to prove, in and of itself, that the defendant was an aider and abettor.

Then the court should define the elements of the principal offense together with any applicable definitions.  The court should not instruct on an attempt unless the defendant is charged with complicity in an attempt.

## Standard of Review

{¶58}  "Due process requires that the state establish beyond a reasonable doubt every fact necessary to constitute the crime charged."  *State v. Lynn*, 129 Ohio St.3d 146, 2011-Ohio-2722, 950 N.E.2d 931, ¶ 15.  Generally, a defendant is entitled to have the court instruct the jury "on all elements that must be proved to establish

the crime with which he is charged, and, where specific intent or culpability is an essential element of the offense, a trial court's failure to instruct on that mental element constitutes error." *State v. Adams,* 62 Ohio St.2d 151, 153, 404 N.E.2d 144 (1980). The failure to instruct a jury concerning an essential element effectively removes that element from the jury's deliberations.

{¶59} If the defendant objects to the error, an appellate court applies a harmless-error review. *State v. Perry*, 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15. Under that standard, "the government bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." *Id.*, citing *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). *See State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 136 ("Once [the defendant] objected to the [error], the burden shifted to the state to demonstrate an absence of prejudice."). The inquiry is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict. *Neder v. United States*, 527 U.S. 1, 15, 119 S.Ct. 1827, 144 L.Ed 2d 35 (1999). When the court fails to instruct on an element, the error is harmless if the "omitted element is supported by uncontroverted evidence[.]" *Id.* at 18. "An appellate court must reverse a conviction if the government does the not satisfy this burden * * * ." *Perry* at ¶ 15.

### The State Failed to Meet its Burden

{¶60} Here, the state failed to demonstrate an absence of prejudice. The state does not dispute that the trial court failed to instruct that the mens rea for complicity to commit felonious assault was knowingly. Instead, the state merely argues on appeal that Mincey was not prejudiced by the omission because the instruction tracked the language of the complicity statute, R.C. 2923.03, and the

court defined complicity as "acting with the kind of culpability required for the commission of an offense * * *." However, the state did not demonstrate that the error did not contribute to the conviction.

{¶61} The state's sole theory and the evidence at trial was that Mincey was an accomplice rather than the principal offender. No testimony supported a theory that Mincey threw the acid. Rather, the evidence was that Mincey's sister threw the acid and that Mincey aided and abetted her. Therefore, I must conclude that the jury found Mincey guilty on an aiding-and-abetting theory.

{¶62} The model instructions required that the jurors be instructed that they must find, beyond a reasonable doubt, that Mincey knowingly aided or abetted another, and immediately after that instruction, the court should have defined knowingly. Additionally, the definition of aid and abet should have made it clear that Mincey must have shared the criminal intent of her sister.

{¶63} In this case, the jury instructions on complicity did not affirmatively state the correct culpable mental state for complicity. The complicity instructions completely omitted the mens rea of knowingly. Although the court mentioned in its complicity definition that "no person, acting with the culpability required for the commission of an offense shall do any of the following," the court failed to specify that the requisite culpability was knowingly, and did not instruct the jury that the underlying offense was felonious assault. This error was compounded by the fact that the court instructed the jurors that "defendant's criminal intent may be inferred," without clarifying that the defendant shared the criminal intent of the principal offender. The concluding instruction did not include any culpable mental state. These jury instructions were flawed because they did not make it clear that Mincey could only be convicted as an aider and abettor if she knowingly acted to aid

22

and abet in the felonious assault.

{¶64}   When the court fails to instruct the jury as to all of the elements of an offense, the error is not harmless unless the "omitted element is supported by uncontroverted evidence." *Neder*, 527 U.S. at 15, 119 S.Ct. 1827, 144 L.Ed.2d 35.  In this case, the evidence against Mincey was not overwhelming and was contested. The only independent witness, Todd Martin, a construction worker, testified that he saw a woman walk up to a house and start yelling and screaming.  Two teenaged girls, who looked like twins, came out of the house, and stood on the porch arguing with the woman on the sidewalk.  After the woman left, the other two teenagers walked down the street.  Later, he saw one of the teenaged girls again leave the same porch and walk down the street with a mason jar with a brownish-reddish liquid. Although he did not see the teen return to the home to retrieve the glass jar, he testified that the home in question was not the Mincey home.

{¶65}  Robinson testified that she did not see Denna leave the house with a jar, but saw her running on the street with a jar without a lid that was completely full with a brown liquid.  None of the liquid splashed or spilled while Denna was running. Denna approached Robinson with the jar and asked, "Which one?"  Mincey responded, "It's that bitch right there."  Robinson also testified that she did not see Mincey or Denna fighting with anyone, and that she did not fight with Denna.

{¶66}  Tynia, Robinson's younger sister, testified that she saw the Minceys leave the house and hurry down the street.  Denna did not have anything in her hands.  Mincey and Denna began fighting.  Denna fought, using both fists, with Keisanna, Tynia, Lakesha and Robinson.  Tynia was fighting with Mincey when Mincey used a taser on her.  During a pause in the fight, Mincey gave Denna a jar that was three quarters of the way full, pointed at Robinson, and said, "Get that bitch

right there." Denna threw the liquid on Robinson. Tynia initially told the police that Denna was wearing a white shirt. She also testified at the first trial trial that the person who threw the jar was wearing a tight white shirt. During the second trial, she testified that she could not remember if Denna was wearing a blue or white shirt. The evidence was uncontroverted that Denna was wearing a blue shirt.

{¶67} Both Mincey sisters testified that they did not have a jar of acid. Denna further testified that she did not throw the acid during the fight. Finally, Mincey denied pointing at Robinson and stating, "It's that bitch right there." Because the evidence was contested, I cannot conclude that the failure to instruct on the mens rea did not contribute to the verdict.

{¶68} The majority concludes that the faulty instructions did not omit an element of the offense. In reaching this conclusion, the majority relies on *Skatzes*, which held that an instruction that tracked the language of the statute was sufficient. *Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, at ¶ 58. The concluding instruction in *Skatzes*, which included a reference to the culpable mental state, instructed that "before you can find the defendant guilty, you must find beyond a reasonable doubt that * * * the defendant, **acting with the required culpable mental state for the particular offense**, * * * conspired with another to commit the offense." Unlike *Skatzes*, the concluding instruction in this case did not mention anything about the requisite mental culpability.

{¶69} Further, the Ohio Jury Instructions have changed since *Skatzes*. They currently require that the mens rea be included and defined when the offender is not charged with violating the complicity statute. Although the instructions are not mandatory, "they are recommended instructions, based primarily upon case law and statutes." *State v. Jones*, 2015-Ohio-5029, 52 N.E.3d 263, ¶ 15 (12th Dist.). "The

24

standard instructions are crafted by the Ohio judicial conference and sanctioned by the Ohio Supreme Court to assist trial judges and lawyers in correctly and efficiently charging the jury on the law applicable to a particular case. The [Ohio Jury Instructions] are authoritative, and are generally to be followed and applied by Ohio's courts." *State v. Jeffries*, 11th Dist. Lake No. 2007-L-011, 2008-Ohio-1894, ¶ 107 (O'Toole, J. concurring).

{**¶70**} The model instructions "suggest that the trial court's failure to instruct on the mens rea of complicity was significant." *Langford v. Warden, Ross Corr. Inst.*, 593 Fed.Appx. 422, 433 (6th Cir.2014), *vacated and remanded*, __ U.S. __, 135 S.Ct. 2888, 192 L.Ed.2d 919 (2015), *aff'd*, 665 Fed.Appx. 388 (6th Cir.2016), *cert. denied*, __ U.S. __, 137 S.Ct. 2187, 198 L.Ed.2d 255 (2017). In *Langford*, the defendant was charged with aggravated murder and murder, both with gun specifications, for the death of a rival gang member in a shootout. *Id.* at 425. At trial, the state presented two theories of the murder. *Id.* at 425-426. The first was that Langford was the actual shooter, and the second was that he was an accomplice. *Id.* at 426. However, the evidence presented at trial was consistent with a theory of accomplice liability rather than principal offender liability. *Id.* at 432.

{**¶71**} The trial court's concluding instruction stated: "Before you can find the defendant guilty of a crime as a complicitor or aider and abettor, you must find beyond a reasonable doubt that ... the defendant aided or abetted another in purposely committing the offenses...." *Id.* at 429. However, the court did not instruct the jury that complicity required a mens rea of purposely. *Id.* at 429. The jury convicted Langford of murder. *Id.* at 426.

{**¶72**} The Sixth Circuit Court of Appeals affirmed the trial court's decision granting Langford's habeas petition because the failure to properly instruct on the

mental culpability for a complicitor violated his jury-trial right. *Id.* at 428. Although the trial court included the mens rea of purposely in its definition in the instructions on aggravated murder, the Sixth Circuit found that the complicity instruction was erroneous because the instruction did not specifically include that the defendant purposely aided and abetted another. *Id.* at 428-429. "[T]he trial court improperly inserted the culpable mental state before the wrong verb." *Id.* at 433. The court ultimately concluded that "[t]he failure to instruct on the mens rea of complicity, therefore, had a substantial influence in determining the jury's verdict." *Id.*

{¶73} Here, as in *Langford*, the trial court failed to instruct on the mens rea of complicity. As the Sixth Circuit explained, "although the instructions did not directly state that complicity is a strict-liability crime, they also did not affirmatively state the correct mens rea. Rather, the instructions omitted mention of the mens rea for complicity altogether." *Id.* at 429. Every element of the offense must be proved beyond a reasonable doubt, and the failure to instruct a jury concerning an essential element effectively removes that element from the jury's deliberations. In this case, the failure to instruct on that element constitutes harmless error. *See Adams,* 62 Ohio St.2d at 153, 404 N.E.2d 144.

{¶74} Therefore, I conclude that the trial court's failure to instruct on an essential element of the offense was error that contributed to the conviction. Accordingly, I would sustain the fourth and seventh assignments of error, reverse the judgment of the trial court, and remand the cause for a new trial.

Please note:

The court has recorded its own entry on the date of the release of this opinion.